Diana L. BAGAN, Plaintiff
and Appellee,

v.

Steven M. BAGAN, Defendant
and Appellant.

Civ. No. 11026.

Supreme Court of North Dakota.

Feb. 20, 1986.

Serkland, Lundberg, Erickson, Marcil & McLean, Fargo, for plaintiff and appellee; argued by Maureen Holman; appearance by Armond G. Erickson.

Stefanson, Landberg, Plambeck & Geeslin, Moorhead, Minn., for defendant and appellant; argued by Randolph E. Stefanson.

LEVINE, Justice.

In this appeal from a divorce judgment we consider the validity of awards of rehabilitative spousal support and child support which provide for a spouse and the children of the parties the continuation of the standard of living enjoyed during the marriage.

We also consider the propriety of the fees awarded to the wife. We affirm in part, reverse in part, and remand.

When Diana L. Bagan and Steven M. Bagan were married in 1973, Diana was an undergraduate and Steven a medical student. During the ensuing seven years, Steven completed his training as an ophthalmologist while Diana obtained her B.A. degree and then contributed to the support of the family by teaching school from 1976 to 1980. In 1981 Steven opened a private practice in ophthalmology. Diana assisted Steven in his practice by working as his nurse, receptionist and bookkeeper for over a year. In 1985 Diana brought this action for divorce. At the time of trial Steven was 33 years old and engaged in a successful ophthalmology practice. Diana was 31 years old and not employed outside the home. The parties' three minor children were six, five, and two years old, respectively, at the time of trial.

The trial court awarded the parties joint custody of the children, their primary residency to be with Diana. The trial court divided the parties' property and awarded Diana spousal support in the amount of $5,000 per month for eight years, $1,000 per month per child in child support until each child was 18 years old, and $5,290 in attorney's and expert witness' fees.

Steven's initial argument is that the trial court erred both as a matter of law and fact in its award of spousal support to Diana.

The award of rehabilitative spousal support was based upon the trial court's finding that Diana's standard of living during the period of rehabilitative spousal support should be commensurate with the standard of living she enjoyed during the marriage, in light of the fact that this would create no financial hardship to Steven. The trial court concluded that, under the circumstances of this case, it would be unfair for Diana to suffer a reduced standard of living because of the divorce, when Steven's resources were sufficient to maintain each party's customary lifestyle.

Steven argues that an award of spousal support which allows Diana to maintain her standard of living during the rehabilitation period was induced by an erroneous view of the law in North Dakota. We disagree.

In *Svetenko v. Svetenko*, 306 N.W.2d 607, 612 (N.D.1981), this Court stated that maintenance of a standard of living [1] could reasonably be within the *Ruff-Fischer* guidelines. Thus, in dicta at least, this Court has agreed that maintenance of a standard of living may be a factor considered in making an award of spousal support. Under the *Ruff-Fischer* guidelines the court may consider such factors as the parties' earning abilities, their financial circumstances and station in life. *Smith v. Smith*, 326 N.W.2d 697 (N.D.1982). Continuance of a standard of living is a valid consideration in spousal support determinations. Other jurisdictions have specifically held so. *E.g., Bassett v. Bassett*, 459 So.2d 473 (Fla.App. 1984); *In the Matter of the Marriage of Steinbrenner and Steinbrenner*, 652 P.2d 845 (Or.App.1982). *Cf., Savage v. Savage*, 658 P.2d 1201 (Utah 1983). (Although *Savage* involved a marriage of longer duration, its reasoning is applicable here).

Furthermore, in our view, it is immaterial whether the spousal support is permanent or rehabilitative. The determinative factor is the sufficiency of income to permit each party to maintain apart the standard of living enjoyed together. In this case, maintenance of Diana's standard of living was a relevant consideration because of Steven's substantial earning ability and the parties' financial circumstances. The trial court, therefore, did not err in awarding spousal support based upon Diana's earlier standard of living.

Steven next asserts that the amount of spousal and child support is clearly erroneous. We agree.

---

**1.** "Standard of living" may be defined as the manner in which one lives at a particular time, *In Re Golodetz' Will,* 118 N.Y.S.2d 707 (N.Y.Sur. 1952), and includes the needs, comforts and luxuries necessary to maintain a person in the style and manner he is accustomed to.

■ The trial court's determinations on matters of spousal and child support are treated as findings of fact which will not be set aside unless clearly erroneous. *Weir v. Weir,* 374 N.W.2d 858 (N.D.1985); *Heller v. Heller,* 367 N.W.2d 179 (N.D.1985). A finding of fact is clearly erroneous if there is no evidence supporting it. *John Larson Co. v. Brunsoman,* 326 N.W.2d 72 (N.D. 1982); *Sturdevant v. Sturdevant,* 315 N.W.2d 263 (N.D.1982) (Pederson, J., specially concurring).

In determining the amount of spousal support the trial court calculated Diana's monthly expenses in finding of fact 35:

"35. ... Diana had the following monthly expenses during their separation period ...:

| | | |
|---|---|---|
| "a) | Home mortgage | $ 910.00 |
| b) | Child care | $ 515.00 |
| c) | House maintenance | $ 241.68 |
| d) | Telephone | $ 56.00 |
| e) | Electricity (heat) | $ 200.00 |
| f) | Water, sewer and garbage | $ 33.00 |
| g) | Cable TV | $ 33.00 |
| h) | Clothing for four people | $ 500.00 |
| i) | Gasoline for automobile | $ 81.34 |
| j) | Van maintenance | $ 61.60 |
| k) | Van insurance | $ 27.00 |
| l) | Household insurance | $ 50.00 |
| m) | Health insurance for Diana | $ 67.15 |
| n) | Dental and medical expenses | $ 250.00 |
| o) | Alissa's gymnastic fees | $ 50.00 |
| p) | Alissa's piano lessons | $ 35.00 |
| q) | Michael's tuition | $ 50.00 |
| r) | Entertainment | $ 200.00 |
| | Total | $3,360.77 |

"In addition Diana received from Steven during that time $1,710.00 in cash, which covered all miscellaneous expenses which obviously had to cover food. The total of the two would be $5,070.77. These expenses do not allow for automobile replacement (depreciation). Neither do they allow for furniture and appliance replacement or emergency expenses if they come up in running a household. They do not cover vacation costs."

While the $5,070.77 established by Diana as her total monthly expenses may not include allowances for furniture and appliance replacement, emergency household expenses or vacation costs, there is no evidence in the record from which the trial court could allocate a reasonable sum for these items. We conclude, as we must, that the trial court did not rely on speculation and did not base its award on such unsubstantiated matters. *Park View Manor v. Housing Authority, Etc.,* 300 N.W.2d 218 (N.D.1980) (trial court's finding presumed correct); *Meyer v. Russell,* 55 N.D. 546, 214 N.W. 857 (1927) (in bench trial it is presumed court considered only competent evidence). With regard to the matter of automobile replacement, there was sufficient evidence in the record of the age and present value of Diana's van from which the trial court could have made a reasonable approximation of the cost of replacing it.

■ We conclude that the trial court's finding that Diana's monthly expenses were $5,070.77 is not clearly erroneous. We also conclude that there is an evidentiary basis for a reasonable approximation of the cost of automobile replacement. However, because the total amount awarded for spousal and child support is based on duplication and is without evidentiary support, we reverse and remand for a redetermination of either spousal support, child support, or both.

The trial court calculated the amount of child support by prorating some of the monthly expenses of $5,070.77 and duplicating others in their entirety.

Finding of fact 36 reads:

"36. The needs of the children are supported by the evidence. Items a, c, d, e, f, g, h, i, j, k, and l in the preceding paragraph [finding of fact 35] are costs wherein 75% are attributable as needs of the three children totaling $1,645.22 ($2,193.62 × 75%). Adding to this sum child care $515.00, Alissa's piano lessons $35.00, and Michael's tuition $50.00, plus an estimated food bill of a minimum of $300.00 for the three, the total would be $3,093.62. This amount exceeds the $3,000.00 allowed by this Court for the children's basic needs." [2]

2. The trial court's calculations in finding of fact 36 are incorrect. The correct monthly sum of

The trial court not only included expense items a and c through 1 in calculating the amount of spousal support, but also incorporated those items, reduced by 25%, in computing the amount of child support. In addition, the trial court included the cost of child care ($515.00, item b), lessons and tuition ($35.00 and $50.00, items p and q), and food ($300.00, miscellaneous expenses) in tabulating both the spousal and child support awards.

Consequently, although Diana will receive sufficient spousal support to enable her to meet the expenses represented by items a and c through 1, she will additionally receive an amount equal to 75% of these same expenses by virtue of the award of child support.[3] For expense items b, p and q, and the $300.00 food expense, Diana in effect receives double payments.[4]

The result of duplicating these payments in both the spousal and child support awards is that support in excess of demonstrated expenses is awarded. The record simply does not support the award of $8,000.00 per month for spousal and child support. Indeed, the trial court acknowledged as much in finding of fact 37 where it was noted that Diana did not "mathematically" prove her need for $5,000.00 a month spousal support.[5]

However, the trial court concluded Diana's standard of living should be equal, not merely to what she enjoys now, but equal to the standard of living that Steven will have in the future for the period set by the court for rehabilitative support. In effect, the trial court decided that Diana's and the children's standard of living should be maintained by an equal division of Steven's disposable income.

While we agree that it is proper in this case to award spousal and child support sufficient to maintain Diana and children in the comfort and luxury they enjoyed during the marriage, there still must be evidence to support such an award. A party seeking support to maintain a standard of living must prove what that standard of living is and what it will take to maintain it, although we agree with the trial court that this does not have to be proven with mathematical precision. Diana did not prove that $8,000.00 was necessary to provide for her and the children's needs, comforts and luxuries.

When there is no evidence to support a finding of fact that finding is clearly erroneous. *John Larson Co. v. Brunsoman, supra; Sturdevant v. Sturdevant, supra.* We therefore hold that factual findings 35, 36, and 37 are clearly erroneous.[6] Accord-

---

the expenses attributable to the children is not $3,093.62, but $2,545.22.

**3.** For example, in the spousal support award Diana was given $910.00 per month for the home mortgage payment (item a). However, pursuant to the child support award Diana additionally receives $682.50 a month ($910.00 × 75%), or $682.50 in excess of the amount needed for the mortgage payment.

**4.** For example, Diana receives $515.00 per month for child care (item b) as spousal support, and again receives the same sum in child support.

**5.** Finding of Fact 37 provides:
"37. Even though Diana has not established a basic need for her spousal support mathematically of $5,000.00, it is the sense of this Court that her standard of living should be commensurate with the standard of living she presently has and equal to the standard of living that Steven will have in the future for the period set by this Court for rehabilitative spousal support. If this were not done, Steven would during that

period of time have excess cash flow greater than his needs for his present standard of living while Diana would be forced into a lesser standard of living."

**6.** Because the trial court considered the tax impact in fashioning its award of spousal and child support, we leave it to the trial court on remand to redetermine the total amount awarded for child and spousal support by modifying either or both as it sees fit. We further note that the trial court determined that there would be a tax consequence of 34% on the $5,000.00 monthly spousal support leaving a net amount of $3,330.00 a month. Diana had estimated her monthly tax cost at $600.00. Steven argues that the trial court improperly computed the tax consequences of the $5,000.00 monthly spousal support because it assumed that Diana would use the short form tax method rather than itemizing her deductions. There is insufficient evidence in the record on this matter. Therefore, on remand, we direct the parties to provide evidence upon which the trial court may determine the tax consequences and consider them

ingly, the awards of spousal and child support are reversed and this case is remanded for a hearing to determine the amount of these awards.[7]

■ Steven also argues that the eight-year duration of rehabilitative support is clearly erroneous. The trial court concluded that Diana's wish to postpone her four-year educational rehabilitation until the youngest child was in school was reasonable. It gave particular credence to Diana's desire to change her vocation from teaching to guidance and counselling in order to increase her earning potential; to the tax laws which require a minimum of six years of spousal support in order to be deductible by the payor; and to the contribution Diana made in furtherance of Steven's career. We conclude the trial court's award of spousal support for eight years is not clearly erroneous.

Steven's final contention is that the trial court erred in awarding Diana $5,290 in attorney's and expert witness' fees.

■ In determining the fees to be paid by the opposing party the trial court should consider, inter alia, the property owned by each party as the result of the property division, the parties' relative income and whether the property is liquid or of fixed assets. *Jondahl v. Jondahl,* 344 N.W.2d 63 (N.D.1984). The trial court's discretion in awarding such fees in a divorce action will not be disturbed on appeal unless the party appealing affirmatively establishes that the trial court abused its discretion. *Heller v. Heller, supra.*

■ The trial court concluded that Steven's attorney's fees were paid to an unknown extent from earnings of Steven's professional corporation. This reduced the value of the corporation for purposes of the property division. The trial court thus determined that Diana indirectly paid for part of Steven's attorney's fees. The trial court also noted that unlike Steven, Diana would have no income aside from her cash property settlement award.

The trial court's analysis demonstrates a proper exercise of its discretion in awarding Diana a portion of her attorney's and expert witness' fees.

Other issues raised do not affect our decision. Accordingly, the judgment is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and GIERKE, J., concur.

---

in its decision on spousal support and child support.

7. The hearing should be limited to adducing evidence on the issue of tax consequences. We

do not mean to give the parties an opportunity to retry the case, although the trial court may wish to enlist the parties' assistance in marshaling the evidence in the record.